# IN THE COURT OF APPEALS OF IOWA

No. 18-1927
Filed October 23, 2019

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**DEVONTEZ DAVID VOIGTS,**
        Defendant-Appellant.
_____


        Appeal from the Iowa District Court for Story County, Bethany Currie,

Judge.


        Devontez Voigts appeals his criminal convictions following a jury trial.

**AFFIRMED ON CONDITION AND REMANDED WITH DIRECTIONS.**



        Mark C. Smith, State Appellate Defender (until withdrawal), and Robert P.

Ranschau, Assistant Appellate Defender, for appellant.

        Thomas J. Miller, Attorney General, and Louis S. Sloven, Assistant Attorney

General, for appellee.



        Considered by Tabor, P.J., and Mullins and May, JJ.

**MULLINS, Judge.**

Devontez Voigts appeals his convictions of second-degree sexual abuse and willful injury causing bodily injury.[1]  He argues the district court erred in overruling his challenge to the racial composition of the jury pool, which violated his constitutional right to a jury drawn from a fair cross-section of the community. Our review is de novo.  *See State v. Lilly*, 930 N.W.2d 293, 298 (Iowa 2019).

Criminal defendants are constitutionally entitled to a jury drawn from a fair cross-section of the community.  *State v. Plain*, 898 N.W.2d 801, 821 (2017). When a defendant lodges a fair cross-section objection, the defendant has the burden to establish a prima facie case by showing:

> (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

*Id.* at 821–22 (2017) (quoting *Duren v. Missouri*, 439 U.S. 357, 364 (1979)).

On September 10, 2018, the day before trial was to commence, Voigts, an African American, filed a motion challenging the racial composition of the jury pool. In the motion, Voigts referenced "race reports" received from the jury clerk showing the racial composition from jury pools in recent years and a racial demographical population estimate from July 2017.  The population estimate provided African Americans comprised 2.9 percent of the county population.  The race reports for

---

[1] Voigts was charged with one count of first-degree sexual abuse, one count of first-degree kidnapping, and one count of willful injury causing serious injury.  The jury found him guilty of the lesser-included offenses of second-degree sexual abuse on counts one and two and willful injury causing bodily injury on count three.  The sexual abuse counts merged.

2017 provided, of the 3275 jurors summoned, thirty-nine, or 1.19 percent, identified as African American. The race reports for 2018, including the "jury panels potentially being brought into court" the week of trial, showed, of the 2913 jurors summoned, thirty-two, or 1.09 percent, identified as African American.[2]

The court heard the motion the morning of trial. As to systematic exclusion, the parties and court discussed whether "the jury pool being drawn from the voter registration and motor vehicle operator's list is systematically excluding African-Americans." *See* Iowa Code § 607A.22(1) (2018). The State took the position that there was insufficient data to reach a conclusion of systematic exclusion. The court specifically requested from defense counsel "statistics that . . . voter registration and driver's license lists somehow impact the African-American community more harshly." Counsel was unable to present the requested statistics, but instead argued incarceration rates among African Americans and loss of voting rights results in systematic exclusion. Counsel did not provide any statistics to support his position. Counsel made no request to be allowed an opportunity to compile such information. *See Plain*, 898 N.W.2d at 828 (holding defendants are entitled "access to the information necessary to prove a prima facie case").

---

[2] From our own review of the race reports, we reached minimally different numbers than those identified in the motion and appellate briefs. The difference is inconsequential to our disposition.

The motion also argued that individuals falling in the "two or more races" category, 1.9 percent, should be added to the "Black or African American alone" category, 2.9 percent, to amount to a percentage of 4.8 for fair cross-section purposes. However, the motion agreed, "The 'two or more races' category may contain blended individuals without Black or African ancestry but the data is not sufficient to be parsed in that manner." We agree with the district court that the inclusion argument would require "mere speculation" and would be inappropriate "without having more accurate information." However, inclusion of the second category is also inconsequential to our disposition.

While the court agreed that significant portions of the entire adult population are excluded from voter registration records and the motor vehicle operators list, the court ultimately ruled it could not "find any evidence that the two lists, the voter registration list and the motor vehicle operator's list, systematically exclude African Americans from being on jury pools" and Voigts therefore failed to establish "a prima facie violation of the fair cross-section requirement."

Upon our de novo review, we agree with the district court that Voigts failed to meet his burden to show that the jury-selection process "practices have produced underrepresentation of a minority group."  *See Lilly*, 930 N.W.2d at 308. He provided no evidence, other than mere speculation, tracing underrepresentation to jury-selection procedures.

That being said, the supreme court recently refined its analysis under *Plain* and adopted the following approach as to systematic exclusion:

> Although the socioeconomic factors that contribute to minority underrepresentation in the jury pool do not systematically exclude distinctive groups, the failure of courts to mitigate the underrepresentation through effective jury system practices is itself a form of systematic exclusion.
>
> Litigants alleging a violation of the fair cross section requirement would still have to demonstrate that the underrepresentation was the result of the court's failure to practice effective jury system management.  This would almost always require expert testimony concerning the precise point of the juror summoning and qualification process in which members of distinctive groups were excluded from the jury pool and a plausible explanation of how the operation of the jury system resulted in their exclusion.  Mere speculation about the possible causes of underrepresentation will not substitute for a credible showing of evidence supporting those allegations.

*Id.* at 307 (quoting Paula Hannaford-Agor, *Systematic Negligence in Jury Operations: Why the Definition of Systematic Exclusion in Fair Cross Section Claims Must be Expanded*, 59 Drake L. Rev. 761, 790–91 (2011)).

Following the supreme court's lead, because the parties did not have the benefit of this refinement at the time of trial, we remand the matter to the district court to give Voigts an opportunity to develop his arguments that his constitutional right to an impartial jury was violated; if the court finds a violation occurred, it shall grant Voigts a new trial. *See id.* at 308; *State v. Veal*, 930 N.W.2d 319, 330 (Iowa 2019); *State v. Williams*, 929 N.W.2d 621, 630 (Iowa 2019).

**AFFIRMED ON CONDITION AND REMANDED WITH DIRECTIONS.**